UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLENE C. KNABE,

Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant.

CASE NO. C04-1653-MJP-MJB

REPORT AND RECOMMENDATION

Plaintiff Charlene Knabe appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income under Title XVI of the Social Security Act. For the reasons set forth below, it is recommended that the Court REVERSE the Commissioner's decision and REMAND for further administrative proceedings.

I. PROCEDURAL HISTORY

Plaintiff initially filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on October 8, 1996, alleging inability to work

beginning September 29, 1995, due to back injury and learning problems. Tr. 27, 36, 38. After those applications were denied initially and on reconsideration, Plaintiff received a hearing before Administrative Law Judge ("ALJ") Ruperta Alexis. ALJ Alexis issued an unfavorable decision on September 4, 1998, finding Plaintiff not disabled and denying benefits. Tr. 27-35. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff did not appeal this determination. Tr. 41-43.

On March 5, 2001, Plaintiff protectively filed a second application for SSI payments. Tr. 84-87, 530. She alleged disability since September 29, 1995, due to esophagus problems, GERD, dizziness, depression, chronic low/mid back pain, neck pain, periodic right hip pain, upper back pain, dyslexia and right hand numbness. Tr. 48, 84. Her application was denied initially and on reconsideration. Tr. 44-47, 49-51. On October 15, 2002, Plaintiff, represented by counsel, had a hearing before Administrative Law Judge ("ALJ") Arthur Joyner. Plaintiff and Medical Expert ("ME") Wil Nelp, M.D. testified at the hearing. Tr. 527-573. Additionally, Vocational Expert Alan Cummings, Ph.D responded to interrogatories that were submitted to him after the hearing. Tr. 145-155. On June 3, 2003, the ALJ issued an unfavorable decision, finding Plaintiff not disabled at any time through the date of the decision, and thus, not eligible to receive SSI payments.[1] Tr. 14-22. Plaintiff's request for review by the Appeals Council was denied on June 25, 2004,

//

---

[1]The ALJ determined that because the time had passed for reopening the earlier unfavorable determination by ALJ Alexis, the time period in question in Plaintiff's current SSI application extends from September 5, 1998, the day after ALJ Alexis' decision.

making the ALJ's decision the final decision of the Commissioner. Tr. 6-9. Plaintiff timely filed her appeal with this Court.

II. THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision, and order the Commissioner to find Plaintiff disabled based upon the substantial evidence in the record, or, in the alternative, remand for further administrative proceedings. Plaintiff argues that the ALJ erred by: 1) failing to properly consider all of Plaintiff's severe physical and mental impairments at step two of the disability evaluation; 2) failing to properly consider all of Plaintiff's severe impairments in assessing her RFC; 3) improperly rejecting Plaintiff's credibility; 4) improperly relying on the Medical-Vocational Guidelines, given Plaintiff's nonexertional limitations; and 5) relying on the VE's testimony when he had been given incomplete hypotheticals and had relied upon assumptions of transferrable skills not shown to exist. Defendant responds that the Commissioner's decision should be affirmed because the ALJ applied correct legal standards and supported his decision with substantial evidence.

III. STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV. EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant

work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## V. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was 47 years old at the time of the hearing before the ALJ. Tr. 532. She has a high school education (Tr. 102, 532), and her past relevant work was as a home healthcare worker (Tr. 97, 563). Plaintiff testified that she has the following problems that make her feel like she cannot work: she cannot stand on her feet very long and she cannot concentrate because of the pain, which is mainly on her lower back; her reading, writing and hearing are a very big hindrance because of her dyslexia; she gets really anxious and embarrassed, and she is not comfortable around people she does not know or large crowds; and she feels inferior. Tr. 545-46. Evidence relevant to Plaintiff's allegations is incorporated into the discussion below.

## VI. THE ALJ'S DECISION

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. Tr. 16. 21. He determined that Plaintiff has the following severe impairments: a back disorder, depressive disorder, and anxiety disorder. Tr. 16. The ALJ found that these impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P of the Regulations. Tr. 18, 21.

The ALJ determined that Plaintiff's residual functional capacity is at a light level of physical exertion with additional restrictions. Tr. 18, 22. Specifically, he found that

Plaintiff's RFC includes only occasional stair and ramp climbing and balancing, and she cannot perform work activity around heights or hazards. Tr. 18. He found that Plaintiff is able to stand/walk for 4 hours in an 8 hour day and able to sit for 6 hours, but with a sit-stand option that allows her to alternate her position at will while not necessitating her leaving her work station or location. *Id.* The ALJ also found that she is limited to simple, routine repetitive work activity. *Id.* Thus, he concluded that Plaintiff is unable to perform her past relevant work. Tr. 20, 22. In reaching this conclusion, the ALJ found that Plaintiff's allegations regarding her limitations are not totally credible. Tr. 19, 22.

At step five, the ALJ determined that Plaintiff has the exertional capacity to perform substantially all the requirements of light work and she retains the capacity to adjust to work that exists in significant numbers in the national economy, including packager, inspector, and assembler. Tr. 21, 22. Therefore, the ALJ concluded that Plaintiff was not disabled at any time through the date of the decision and is not eligible for SSI payments. *Id.*

## VII. DISCUSSION

### A. ALJ's Assessment of Plaintiff's Severe Impairments

Plaintiff argues that the ALJ's step two evaluation of her severe impairments was incomplete because he ignored or overlooked her physical impairments of left leg weakness and obesity, and her mental impairment of dyslexia/reading disorder. A claimant's impairment, or combination of impairments, is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a). The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *See Bowen v. Yuckert*, 482 U.S. 137, 153-54

(1987). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

1. <u>Obesity</u>

Plaintiff claims that the medical evidence establishes that she suffers from obesity which limits her function. She argues that despite objective medical evidence of her obesity, the ALJ failed to discuss it in his decision and never evaluated this impairment at step two to determine whether it is severe. Defendant responds that the ALJ did not find Plaintiff obese in his written decision and that Plaintiff has not identified any functional limitations secondary to obesity.

Social Security Ruling 02-01p ("SSR 02-01p") indicates that "[a]s with any other medical condition . . . obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-01p, 2000 WL 628049, *4. SSR 02-01p sets out the following description of how the SSA identifies obesity as a medically determinable impairment:

> When establishing the existence of obesity, we will generally rely on the *judgment of a physician* who has examined the claimant and reported his or her appearance and build, as well as weight and height. . . . When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we *may* ask a medical source to clarify whether the individual has obesity. However, *in most such cases we will use our judgment* to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity.

SSR 02-01p, *3 (emphasis added). Additionally, SSR 02-01p provides:

There is no specific level of weight or BMI [body mass index] that

> equates with a "severe" or "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

*Id.*, *4.

Here, Plaintiff neither alleged obesity in her application for SSI, nor identified obesity as one of her issues when testifying at the administrative hearing. Plaintiff now highlights notations in her medical records from July 1998 though May 2001 reflecting her height at 5 foot 3 and ½ inches tall and body weight ranging from 190 to 198 pounds, which converts to a BMI of 33. However, SSR 02-01p makes it clear that no specific level of weight or BMI equates to whether impairment is "severe" or not severe." Although in 1999, Karen Goodman, ARNP, diagnosed obesity as one of Plaintiff's conditions and rated it at level 5 severity on a physical evaluation form, she did not include a diagnosis of obesity in two subsequent physical evaluation forms she completed in December 2000 and June 2001. Tr. 356-59. Moreover, Nurse Goodman's diagnosis does not constitute the "judgment of a physician" who had examined the claimant as provided in SSR 02-01.

Likewise, the ME's opinion that obesity was one of Plaintiff's issues was based on his review of the record, rather than an examination of the Plaintiff. Significantly, the one examining physician, Robert Chinnapongse, M.D., who described Plaintiff as "moderately obese" did not opine that obesity significantly limited Plaintiff's physical or mental ability to do basic work activities. Tr. 242-43. Accordingly, because the record does not reveal any obesity-related functional limitations, the undersigned concludes that the ALJ's failure to directly address Plaintiff's weight is not reason for reversal or remand. *See e.g., Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)

(finding that where record did not indicate that obesity exacerbated claimant's other impairments (other than possibly back pain), ALJ did not commit reversible error by not considering claimant's obesity at step 2 of the sequential analysis).

2. Left Leg Weakness and Degenerative Disc Disease

Plaintiff argues that the ALJ erred when he ignored her left-leg weakness and degenerative disc disease ("DDD"). She asserts that in the September 1998 decision on her prior application for disability benefits, ALJ Alexis found that Plaintiff has severe impairments of left leg weakness and DDD. Plaintiff argues that there is substantial evidence that these impairments continue to be severe impairments and there is no subsequent "medical improvement" in her condition documented in the record to justify ALJ Joyner's refusal consider these impairments. Defendant's response brief does not address this claim.

As noted in footnote 1, supra., Plaintiff's current SSI application extends from September 5, 1998, the day after ALJ Alexis' decision. Thus, notwithstanding ALJ Alexis' prior finding on Plaintiff's severe impairments, Plaintiff has the burden at step two of establishing, through objective medical evidence in the current record, that she has left leg weakness and degenerative disc disease that are medically severe impairments. While Plaintiff points to certain medical records that she claims provide support for this argument (Tr. 357, 453-54, 302, 278, 253-54), this Court does not agree that these records satisfy Plaintiff's burden.

Careful review of those medical records reveal that when listing a diagnosis of Plaintiff's medical conditions, none of the treatment providers included left leg weakness or degenerative disc disease. *See* Tr. 356, 453-54. Indeed, DDD is not mentioned in any of these records, and references to left leg weakness appear primarily

in sections of the medical report regarding Plaintiff's subjective description of her condition. *See* Tr. 302, 454. One medical provider notes that Plaintiff's "physical exam today, is fairly unremarkable" (Tr. 302) and "straight leg raising test is negative bilaterally, both seated and supine" (Tr. 303). Another medical provider indicates that she was "unable to reproduce the [lower extremity] numbness with any of the testing." Tr. 278. Additionally, rather than diagnosing any weakness of significant severity in Plaintiff's "left leg," Nurse Goodman only referred generally to "pain and leg weakness > 4 blocks walking" in describing limitations in mobility resulting from Plaintiff's medical conditions. Given this evidence, I conclude that the ALJ did not err in failing to discuss left leg weakness and DDD at step 2 of the sequential evaluation.

3. Dyslexia/Reading Disorder

Plaintiff argues that the ALJ erred as a matter of law when he failed to assess all of Plaintiff's severe mental impairments pursuant to the procedures set forth in 20 C.F.R. 404.1520a. Specifically, Plaintiff argues that the ALJ erred when rating the severity of Plaintiff's mental impairments under the special techniques in 20 C.F.R. 416.920a because he limited his evaluation only to the effects of Plaintiff's anxiety and depression, and ignored her dyslexia/reading disorder. Defendant responds that Plaintiff has failed in her burden to prove that these impairments were medically determinable, severe impairments. Defendant also argues that the ALJ limited Plaintiff to simple, routine, repetitive work and thus incorporated any mental impairments.

Here, the record shows that one medical provider, Dr. Dan Brinkman, who conducted psychological/psychiatric evaluations of Plaintiff in February and June, 2001, diagnosed Plaintiff as having not only adjustment disorder with mixed anxiety and depression, but also a reading disorder that caused mild to moderate limitation on

cognitive factors relevant to Plaintiff's ability to perform basic work activities. Tr. 368-71; 372-75. In a section of the February 2001 evaluation form that requests additional observations which may have a bearing on the individual's ability to perform during a normal work day, Dr. Brinkman opined that "a key seems to be helping her [Plaintiff] deal with her back *and reading* problems and finding suitable work with these limitations." Tr. 375 (emphasis added). The ALJ's decision specifically mentions Dr. Brinkman's diagnosis regarding the adjustment disorder with mixed anxiety and depression (Tr. 16), and apparently adopts that portion of the diagnosis given that he identified depressive disorder and anxiety disorder among Plaintiff's severe impairments (Tr. 17). However, the ALJ failed to mention the reading disorder diagnosis or give any reason for rejecting that portion of Dr. Brinkman's opinion. Accordingly, the undersigned concludes that the ALJ erred in this regard.

B. ALJ's Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective testimony and finding that she was not fully credible. If a claimant has established an underlying impairment which reasonably could be expected to produce the alleged subjective complaints and there is no evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Varney v. Sec'y of Health and Human Servs.*, 846 F.2d 581, 584 (9th Cir. 1988) (Varney I).

In assessing credibility, the ALJ may consider, for example: 1) ordinary techniques of credibility evaluations, such as the claimant's reputation for lying and

prior inconsistent statements concerning the symptoms; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; 3) the claimant's daily activities; and 4) medical evidence tending to discount the severity of subjective claims. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

In this case, the ALJ found that Plaintiff's allegations about her limitations were not totally credible due to inconsistency between her allegations and the objective findings. Tr. 19. Specifically, the ALJ states the following:

> In March 1999, the claimant complained about an exacerbation of chronic low back pain. Yet, objective findings showed an excellent range of motion and more flexibility than usual: findings that do not support her subjective allegations. In an example of other inconsistency, the claimant alleged that she was unable to stand on her feet. However, the record reflects an ability to move relatives' furniture and clean a relative's apartment. She also reported that she could not concentrate sufficiently to even understand the subjects of her parents' conversations. Yet, she also stated she was able to watch movie/television plots during the four hours a day she devoted to this sedentary activity. There is a disconnection between the claimant's allegations, the objective findings, and even her own testimony.

Tr. 19. Having carefully reviewed the record, the undersigned concludes that the reasons identified by the ALJ satisfy the "clear and convincing" standard as there is sufficient evidence in the record to support the ALJ's reasoning.

C. ALJ's RFC Assessment

Plaintiff argues that the ALJ's RFC assessment at step 4 is per se erroneous because he failed to consider all of Plaintiff's severe impairments. A claimant's RFC is based on what she can still do despite her limitations. *See* 20 C.F.R. § 416.945(a). At the hearing level, the ALJ evaluates a claimant's RFC at step four of the sequential evaluation process by considering all of the evidence, including any physical and mental limitations. *See* 20 C.F.R. § 416.945(a)(b)(c), 416.946, and SSR 96-8p. SSR 96-8p provides that "[t]he RFC assessment considers only functional limitations and

restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." The ALJ is free to accept or reject restrictions the claimant alleges provided that his findings are supported by substantial evidence. *Magallanes*, 881 F.2d at 756-57.

As noted above, the ALJ erred at step two in failing to address whether Plaintiff's diagnosed reading disorder was a severe impairment. Therefore, the ALJ necessarily must reevaluate Plaintiff's RFC to consider the combined effect of all of Plaintiff's mental and physical impairments on her ability to function.

D. Plaintiff's Remaining Claims

In a final catch-all paragraph at the end of the arguments in her opening brief, Plaintiff claims that: 1) the ALJ's reliance upon the Medical-Vocational Guidelines was per se erroneous given Plaintiff's nonexertional limitations, and 2) the ALJ's reliance on the vocational expert testimony was erroneous as the hypotheticals were incomplete and the VE relied upon assumption of skills not shown to exist. This court need not evaluate these claims because aspects of the disability determination must be reassessed as noted in sections "A.3" and "C" above. Thus, these remaining issues are best addressed on remand as it is the ALJ who is responsible for weighing the evidence and resolving ambiguities in the record. *See Andrews*, 53 F.3d at 1039.

//

//

//

//

//

//

## VIII. CONCLUSION

The Commissioner's determination to deny Plaintiff SSI benefits is not supported by substantial evidence and is not free of legal error. Based on the record evidence, the undersigned recommends that the Commissioner's decision be reversed and remanded

for further administrative proceedings. A proposed Order accompanies this Report and Recommendation.

DATED this 3rd day of April, 2006.

MONICA J. BENTON
United States Magistrate Judge